UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TEXAS BRINE COMPANY, LLC | CIVIL ACTION |
| VERSUS | NO. 18-6610 |
| AMERICAN ARBITRATION ASSOCIATION, INC., ET AL | SECTION "R" (5) |

# ORDER AND REASONS

Before the Court are motions for judgment on the pleadings filed by defendant American Arbitration Association (AAA), defendant Anthony DiLeo, and defendant Charles Minyard.[1] The court grants these motions because defendants' arbitral immunity bars suit against them, and because vacatur is the exclusive remedy for them to challenge the arbitration award under the Federal Arbitration Act (FAA).

## I. BACKGROUND

This case arises out of an arbitration dispute.[2] Plaintiff Texas Brine Company entered into arbitration with Occidental Chemical Corporation, the owner of one of the brine wells that it operated, after a sink hole caused

---

[1] R. Doc. 14; R. Doc. 13; R. Doc. 12.
[2] R. Doc. 1 at 5 ¶ 11. For a more detailed account of the facts of this case, see R. Doc. 73.

significant damage in 2012.[3] In February of 2018, Texas Brine sought to disqualify defendants DiLeo and Minyard, two of the arbitrators on the arbitration panel presiding over the dispute, for undisclosed conflicts of interest.[4] A Louisiana state court vacated the panel's substantive rulings, issued before Texas Brine learned of the conflict, on June 19, 2018.[5] Texas Brine then filed this suit in Louisiana state court on July 6, 2018.[6] It sought to recover its arbitration costs and the costs from the state court litigation challenging the arbitration award due to DiLeo and Minyard's alleged conflicts of interest.[7] It also named the AAA as a defendant for its role in appointing the allegedly conflicted arbitrators and for refusing to remove DiLeo from plaintiff's arbitration panel, allegedly in violation of its ethics policies.[8]

On July 10, 2018, the AAA removed this action to federal court.[9] Defendants now seek judgment on the pleadings on the basis of arbitral immunity and the FAA.[10]

---

[3] R. Doc. 1-1 at 4-5 ¶¶ 15-18.
[4] *Id.* at 21 ¶ 76.
[5] Manual Attachment to R. Doc. 1 at 78.
[6] R. Doc. 1-1 at 1.
[7] *Id.* at 30-31 ¶¶ 112-18.
[8] *Id.* at 22 ¶ 81.
[9] R. Doc. 1.
[10] R. Doc. 12; R. Doc. 13; R. Doc. 14.

## II. LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate if the matter can be adjudicated by deciding questions of law rather than factual disputes. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). It is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must look only to the pleadings, *Brittan*, 313 F.3d at 904, and exhibits attached to the pleadings, *see Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 n. 4 (5th Cir. 1998). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

### A. Arbitral Immunity

Defendants argue that Texas Brine's claims against all defendants are barred by arbitral immunity. Arbitral immunity, an absolute immunity related to judicial immunity, applies to arbitrators because their role "is functionally equivalent to a judge's role." *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996). It extends to "all acts within the scope of the arbitral process" and covers both individual arbitrators and their sponsoring organizations. *Id.* at 382-383 (holding that "arbitral immunity

4

would be almost meaningless" if litigants could simply shift liability to the organization rather than the individual); *see also Jason v. Am. Arbitration Ass'n*, 62 F. App'x 557, 558 (5th Cir. 2003) ("The organizations that sponsor arbitrations are entitled to immunity from civil liability as well with regard to the tasks that they perform that are integrally related to arbitration."). The failure by DiLeo and Minyard to disclose their alleged conflicts is an act within the scope of the arbitral process, as is the AAA's selection of the arbitrators and refusal to disqualify them. *See Blue Cross Blue Shield of Tex. v. Juneau*, 114 S.W. 3d 126, 132 (Tex. App. 2003) (relying on federal precedent to come to the conclusion that failure to disclose a business relationship is covered by arbitral immunity because "the disclosure requirement [is] directly related to [defendant's] function as an arbitrator"); *Olson*, 85 F.3d at 383 (holding that selection of arbitrators is covered by arbitral immunity); *Jason*, 62 F. App'x at 558 (holding that AAA's refusal to disqualify an arbitrator is covered even when doing so violates its internal rules). Under federal law, all of defendants' acts on which Texas Brine bases its claims are therefore protected by arbitral immunity.

Texas Brine argues that because this case is in federal court under diversity jurisdiction, and because there is no Louisiana statute conferring arbitral immunity, the Court should "apply Louisiana substantive law to this

dispute" and hold that no arbitral immunity exists.[11] But the arbitration giving rise to this action is governed by the Federal Arbitration Act (FAA),[12] and federal courts apply federal immunity laws in cases where the act applies. The FAA preempts state law "to the extent necessary to protect the achievement of the aims of the FAA." *Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1062 (5th Cir. 1990); *FIA Card Servs., N.A. v. Weaver*, 62 So.3d 709, 712 (La. 2011) ("[A]ny 'inconsistency between the [FAA] and Louisiana law must be resolved in favor of the federal act as federal law preempts contrary state law.'") (quoting *Blount v. Smith Barney Shearson, Inc.*, 695 So.2d 1001, 1003 (La. App. 4 Cir. 1997)). Courts must therefore apply federal law whenever state law could undermine a federal policy favoring arbitration. *Wasyl, Inc. v. First Bos. Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987). In *Wasyl,* the Ninth Circuit, relying on federal precedent, held that arbitral immunity is an area in which courts should apply federal law because it is necessary to protect the aims of the FAA. It stated:

> As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect the decision-maker from undue influence

---

[11] R. Doc. 56 at 7.
[12] Texas Brine's contract underlying this dispute specifies that any dispute or claim arising out of the agreement must be resolved through arbitration, and that the arbitration is governed by the FAA. *See* Sealed Attachment to R. Doc. 1 at 43.

6

> and protect the decision-making process from reprisals by dissatisfied litigants. Because federal policy encourages arbitration and arbitrators are essential to furthering that policy, it is appropriate that immunity be extended to arbitrators for acts within the scope of their duties and within their jurisdiction.

Similarly, in *Jason v. American Arbitration Association*, the Fifth Circuit looked to federal law when it applied arbitral immunity in a diversity case governed by the FAA. *Jason*, 62 F. App'x at 558 (holding that arbitral immunity applied based on exclusively federal precedent). The state law claims in Jason were nearly identical to Texas Brine's claims in this action. *See Jason v. Am. Arbitration Ass'n*, No. 02-474, 2002 WL 1059005, at *1 (E.D. La. May 23, 2002) (holding that state law contract and negligence claims were subject to arbitral immunity). In fact, every circuit to have considered this question has extended quasi-judicial immunity to arbitrators acting in the scope of their duties, *see Jason*, 62 F. App'x at 558, and none of these has applied state law immunity regardless of the character of the claims.

But even if federal arbitral immunity rules did not apply to cases governed by the FAA, Louisiana law favors arbitral immunity. Texas Brine cannot point to any instances in which a Louisiana court refused to recognize arbitral immunity. While the Louisiana Supreme Court has not directly addressed the issue of arbitral immunity, it patterns its interpretations of

7

Louisiana arbitration law on federal law. *See Lafleur v. Law Offices of Anthony G. Buzbee, P.C.*, 960 So. 2d 105 (La. App. 1 Cir. 2007) ("Jurisprudence has recognized that the FAA and the LBAL are virtually identical; therefore . . . federal jurisprudence interpreting the FAA may be considered in construing the LBAL.") (internal quotation marks omitted). Louisiana courts also pattern their immunity decisions after federal law. *See Cain v. City of New Orleans*, 184 F. Supp. 3d 379, 391 (E.D. La. 2016) (holding that quasi-judicial immunity applied equally under federal law and Louisiana law because they do not differ); *Moore v. Taylor*, 541 So. 2d 378, 381 (La. App. 2 Cir. 1989) ("Louisiana jurisprudence on judicial immunity mirrors the federal doctrine."). The Louisiana Supreme Court has also upheld absolute immunity for witnesses, which is similarly a common law immunity based on the principle of judicial immunity. *See Marrogi v. Howard*, 805 So. 2d 1118, 1127-28 (La. 2002) ("In Louisiana, the affirmative defense of witness immunity or privilege has evolved from the jurisprudence."). There is therefore no reason to think that a Louisiana court would refuse to extend immunity to these defendants.

Finally, the choice of law provision in Texas Brine's contract that underlies this litigation provides that the agreement shall be governed by "the laws of the United States and, to the extent not inconsistent therewith,

8

the laws of the State of Louisiana . . . ."[13] Even if there were support for the premise that Louisiana does not recognize arbitral immunity, Louisiana law would then be inconsistent with federal law, and the Court would still be obligated to apply federal law under the terms of the contract. There is therefore no circumstance in which Texas Brine's claims are not barred.[14]

Texas Brine also contends that there is an exception to arbitral immunity for equitable remedies such as unjust enrichment.[15] It relies on the case *Pulliam v. Allen*, 466 U.S. 522 (1984), in which the Supreme Court recognized an exception to judicial immunity for Section 1983 claims seeking prospective injunctive relief against state court judges acting in their official capacity. *Id.* at 541-42. The *Pulliam* decision was statutorily overruled as to 1983 claims in 1996 by the Federal Courts Improvement Act (FCIA), which amended Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated

---

[13] Sealed Attachment to R. Doc. 1 at 43.
[14] Texas Brine argues that Louisiana Civil Code Article 2004 prevents the Court from applying arbitral immunity in this case. R. Doc. 56 at 11. Given that Louisiana law mirrors federal law, under which defendants are subject to absolute arbitral immunity, and that Louisiana law cannot apply in this action to the extent that it is inconsistent with federal law, there is no reason to think that Article 2004 would apply or would negate arbitral immunity.
[15] *Id.* at 13-18.

9

or declaratory relief is unavailable." 42 U.S.C. § 1983. Circuits that have addressed the issue have interpreted *Pulliam* as either not creating an exception to judicial immunity beyond the 1983 context, or as being entirely overruled by the FCIA. *See Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385 (9th Cir. 1987) (holding that Pulliam never applied to claims outside of 1983); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (holding that *Pulliam* is no longer a basis to allow injunctive relief against judges even outside of the 1983 context). The Court thus cannot extend the *Pulliam* judicial immunity exception to arbitral immunity because it no longer exists even for judicial immunity in the 1983 context.

Even if the exception to judicial immunity recognized in *Pulliam* did apply beyond the 1983 context, had not been statutorily overruled, and this Court were to then extend such a principle to arbitral immunity, Texas Brine's claims would not be covered by this exception because they do not seek injunctive relief. Texas Brine argues that its claim of unjust enrichment is an equitable claim included under the *Pulliam* exception.[16] But the Pulliam exception was limited to *injunctive* relief and to attorney's fees under 42 U.S.C. § 1988. It did not include all other types of relief deemed equitable. *See Pulliam*, 466 U.S. at 543 (hesitating to allow even recovery of attorney's

---

[16] *Id.* at 15-18.

10

fees because they are the "functional equivalent of monetary damages and monetary damages indisputably are prohibited by judicial immunity"). The relief that Texas Brine seeks is payment for the losses it suffered as a result of defendants' alleged failure to disclose conflicts of interest.[17] These are essentially damages by another name. The *Pulliam* exception would therefore not permit this type of recovery against defendants.

### B. Plaintiff May Not Seek Remedies Outside of the Federal Arbitration Act

Even if arbitral immunity did not apply to defendants' actions, plaintiff's claims are barred because the FAA is the exclusive remedy for claims such as Texas Brine's that challenge misconduct in the administration of an arbitration award. *Smith v. Shell Chem. Co.*, 333 F. Supp. 2d 579, 583 (5th Cir. 2004); *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1211-12 (6th Cir. 1982) (holding that "the Federal Arbitration Act provides the exclusive remedy for challenging acts that taint an arbitration award" and challenges to arbitrator selection "are squarely within the scope of section 10 of the Arbitration Act"). Section 10 of the FAA provides that a court may "make an order vacating the award" where "there was evident partiality or corruption" by any of the arbitrators. 9 U.S.C. § 10. This process, which Texas Brine has

---

[17] *Id.* at 17.

already sought and received,[18] is the only challenge that Texas Brine may bring for any conduct relating to this arbitration. *Corey*, 691 F.2d at 1212 ("Barring [a defect in the underlying agreement to arbitrate or a remedy under Section 10] the Arbitration Act provides no other avenue by which an arbitration award may be challenged.").

Section 10 does not allow litigants to recover costs or attorney's fees in a vacatur proceeding. See 9 U.S.C. § 10(b) (allowing a court to order a rehearing by the arbitrators only in the event of vacatur). Texas Brine's attempt to reconfigure its claims as something other than a challenge to the arbitration award does not allow it to circumvent the FAA or to recover damages and costs unavailable under the act's provisions.[19] *See Corey*, 691 F.2d at 1213. Such collateral attacks on arbitrators "circumvent the [provided remedies] and seek relief outside the statutory limitations, rendering meaningless the notion that parties can contract to be bound to an arbitrated agreement." *Juneau*, 114 S.W. 3d at 136 (referring to the Texas Arbitration Act). The FAA prohibits the remedies that plaintiff seeks.

---

[18] *See* Manual Attachment to R. Doc. 1 at 71.
[19] *See* R. Doc. 56 at 18-21. Texas Brine argues that its attempt to recover the costs of its arbitration are not an impermissible collateral attack on the arbitration award.

Finally, Texas Brine argues that even if this Court finds that its claims are barred, it should allow it to amend its complaint.[20] But arbitral immunity bars all civil claims against defendants in the scope of the arbitral process. Texas Brine challenges only acts that are within the scope of the arbitral process. Therefore, any claim that Texas Brine adds will also be barred by arbitral immunity. Similarly, plaintiffs have already received the only remedy available under the FAA to challenge the events that resulted in their arbitration award. Because arbitral immunity and the FAA bar all claims arising out of this arbitration, allowing plaintiff to amend would be futile. *See Imbornone v. Tchefuncta Urgent Care, Inc.*, No. 11-3195, 2013 WL 3818331, at *5 (E.D. La. July 22, 2013) (denying leave to amend complaint under Rule 16(b) when the deadline to amend had passed and his proposed amendment would be futile); *In re Belle Chasse Marine Transp., Inc.*, No. 12-1281, 2013 WL 3422032, at *4 (E.D. La. July 8, 2013) (same).

---

[20] R. Doc. 56 at 24.

## IV. CONCLUSION

For the foregoing reasons, defendants' motions for judgment on the pleadings are GRANTED. Plaintiff Texas Brine's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __2nd__ day of November, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE